**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ERIC LOWRY, ANSH BAHRI, GABRIEL HA, and JENNIFER HENLEY individually and on behalf of all others similarly situated, | NO.: |
| Plaintiffs, | |
| v. | |
| THE MATHWORKS, INC., THE MATHWORKS 401(K) RETIREMENT PLAN ADVISORY TEAM, and JOHN DOES 1-10, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs, Eric Lowry, Ansh Bahri, Gabriel Ha, and Jennifer Henley ("Plaintiffs"), by and through their attorneys, on behalf of The MathWorks 401(k) Retirement Plan (the "Plan"),[1] themselves and all others similarly situated, state and allege as follows:

## I. INTRODUCTION

1. This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, which include The MathWorks, Inc. ("MathWorks" or "Company"), and the MathWorks 401(k) Retirement Plan Advisory Team and its members (the "Committee") during the Class Period.

2. The Plan is a defined contribution plan, established pursuant to 29 U.S.C. § 1002(2)(A) and § 1002(34) of ERISA, that enables eligible participants to make tax-deferred

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

contributions from their salaries to the Plan. *See* Independent Auditor's Report ("Auditor's Report"), attached to 2024 Form 5500 for the Plan, at 10 ("The Plan is a defined contribution plan covering all employees of The MathWorks, Inc.").

3. To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. 29 U.S.C. § 1104(a)(1). These twin fiduciary duties are "the highest known to the law." *Moitoso v. FMR LLC*, 2020 WL 1495938, at * 6 (D. Mass. Mar. 27, 2020) (quoting *Braden v. Wal-mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

4. The Department of Labor ("DOL") has also explicitly stated that employers are held to a "high standard of care and diligence" and must, among other duties, "establish a prudent process for selecting investment options and service providers." [2]; *see also Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1823 (2015) ("*Tibble I*") (reaffirming the ongoing fiduciary duty to monitor a plan's investment options).

5. The Supreme Court states that in interpreting "ERISA's duty of prudence in light of the common law of trusts" a fiduciary "has a continuing duty of some kind to monitor investments and remove imprudent ones" and a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. *Hughes v. Nw. Univ.*, 595 U.S. 170, 175, 142 S. Ct. 737, 741, 211 L. Ed. 2d 558 (2022).

6. Further, under 29 U.S.C. § 1104(a)(1), a plan fiduciary must give substantial consideration to the cost of investment options and plan costs in general. "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management

---

[2] *See* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Sept. 2019), at 2, available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited June 24, 2026).

of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act (the "UPIA"), § 7.

7. "The Restatement … instructs that 'cost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but also in monitoring and reviewing investments.'" *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*) (quoting Restatement (Third) of Trusts, § 90, cmt. b) ("*Tibble II*").[3]

8. Plaintiffs allege that during the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties owed to the Plan, to Plaintiffs, and to the other participants of the Plan by, *inter alia*, failing to objectively and adequately review the Plan's investment portfolio, initially and on an ongoing basis, with due care to ensure that each investment option was prudent, in terms of cost and performance.

9. At all times during the Class Period, the Plan had at least $1 billion dollars in assets under management. At the Plan's fiscal year end in 2020, the Plan had $1,158,344,500 in assets under management that were/are entrusted to the care of the Plan's fiduciaries. *See* 2020 Form 5500 for the Plan, Schedule H, at 2.

10. By 2024, the Plan had $1,798,430,908 in assets under management. *See* 2024 Form 5500 for the Plan, Schedule H, at 2.

11. The Plan's assets under management qualifies it as a jumbo plan in the defined contribution plan marketplace, and among the largest plans in the United States. In 2023, only 0.1

[3] *See also* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Aug. 2013), at 2, available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited June 24, 2026) ("You should be aware that your employer also has a specific obligation to consider the fees and expenses paid by your plan.").

percent (1,005 of 721,950) of plans in the country had more than $1 billion in assets under management.[4] In addition, this was true at the start of the Class Period in 2020 where only 0.1 percent (892 of 616,050) of 401(k) plans in the country were as large as the Plan.[5]

12. The Plan is also large in terms of the number of its participants. At the beginning of the Class Period, the Plan had 4,396 participants. *See* 2020 Form 5500 for the Plan, at 2. By 2024, the Plan had 5,108 participants. *See* 2024 Form 5500 for the Plan, at 2.

13. With regard to the Plan's investments, Defendants breached their fiduciary duty of prudence by imprudently selecting and retaining certain funds on the Plan's investment menu.

14. These funds included the following funds for which there were lower share class alternatives that the Plan's fiduciaries failed to select:

| **Fund in Plan** | **Ticker** | **Full Name** |
|---|---|---|
| Winslow LC Gro | MLAIX | Winslow Large Cap Growth Class I |
| Columbia Div Inc Adv Sh[6] | CVIRX | Columbia Dividend Income Adv |
| Columbia Div. Inst sh | GSFTX | Columbia Dividend Income Fund Institutional Class |
| William and Blair Inst. Int'l | WBIIX | William Blair Institutional International Growth Fund |
| LS Small Cap Growth | LSSIX | Loomis Sayles Small Cap Growth Fund Institutional Class |
| Van Real Estate Index Inst | VGSNX | Vanguard Real Estate Index Fund Institutional Shares |
| Invesco Opp Dev Mkt Y | ODVYX | Invesco Developing Markets Fund Class Y |

[4] *See* The ICI/ISS Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2023 at Ex. 1.2, p. 6., available at https://www.ici.org/system/files/2026-03/26-rpt-dcplan-profile23-401k.pdf.

[5] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2020 at Ex. 1.2, p. 7, available at https://www.ici.org/system/files/2023-09/23-rpt-dcplan-profile-401k.pdf.

[6] The Plan converted to the Columbia Dividend Income Fund Institutional Class on November 22, 2024.

15. The Plan also included at least two mutual funds, including the Winslow Large Cap Growth Fund, for which there were better performing Collective Trust ("CITs") alternatives that were not selected even though they were identical to the mutual fund versions in every material way except they were less expensive:

| **Fund in Plan** | **Ticker** | **Full Name** |
|---|---|---|
| Winslow LC Gro | MLAIX | Winslow Large Cap Growth Class I |
| Van Tot Bond Mkt Index | VBTIX | Vanguard Total Bond Market Index Fund Institutional Shares |

16. The Plan also included the following mutual funds, some of which are funds mentioned above, for which there were better performing alternatives that were materially similar in every material way, but were not selected:

| **Fund in Plan** | **Ticker** | **Full Name** |
|---|---|---|
| Winslow LC Gro | MLAIX | Winslow Large Cap Growth Class I |
| Columbia Div Inc Adv Sh | CVIRX | Columbia Dividend Income Adv |
| Van Tot Bond Mkt Index | VBTIX | Vanguard Total Bond Market Index Fund Institutional Shares |
| Pimco Total Return Inst | PTTRX | PIMCO Total Return Fund Institutional Class |
| William and Blair Inst. Int'l | WBIIX | William Blair Institutional International Growth Fund |
| LS Small Cap Growth | LSSIX | Loomis Sayles Small Cap Growth Fund Institutional Class |
| MFS New Disc Value R6 | NDVVX | MFS New Discovery Value Fund Class R6 |
| Invesco Opp Dev Mkt Y | ODVYX | Invesco Developing Markets Fund Class Y |

17. Plaintiffs also allege that Defendants breached the duties they owed to the Plan, to Plaintiffs, and to the other participants of the Plan by failing to "defray[] reasonable expenses of administering the [401(a) Plan]." 29 U.S.C. § 1104(a)(A)(ii).

18. Their failure stems from two related circumstances that can be classified as nothing less than complete disregard for fiduciary duty. The first is that the Plan's fiduciaries oversaw a

Plan that had some of the highest administrative fees (together, "Administrative Fees") among its peers. Secondly, the Plan's fiduciaries utilized Plan participant forfeited funds to reduce Company contributions to the Plan instead of using the funds to reduce or eliminate the amounts charged to Plan participants for the excessively high Plan Administrative Fees. These actions by the Company were clear breaches of the duties of prudence and loyalty to Plan participants and cost the Plan participants millions of dollars.

19. Defendants' overall mismanagement of the Plan, to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duty of prudence, in violation of 29 U.S.C. § 1104. Their actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

20. Lastly, Defendants have impeded Plaintiffs' ability to obtain information related to their claims by withholding a key piece of the Plan's operative document: the investment policy statement for the Plan ("IPS"). As detailed below, Plaintiffs initiated their investigation of the Plan last year and, among other things, on November 5, 2025, requested operative Plan documents from the Plan administrator, including an IPS. The Plan administrator has confirmed the existence of an IPS but has refused to produce it and other information.

21. Based on the foregoing conduct, Plaintiffs assert claims against Defendants for breach of the fiduciary duty of prudence (Counts I and II), breach of the fiduciary duty of loyalty (Count III), failure to monitor fiduciaries (Count IV), and Failure to Furnish Governing Plan Documents (Count V).

## II. JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29

U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

23. This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

24. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III. PARTIES

### Plaintiffs

25. Plaintiff, Eric Lowry ("Lowry"), resides in Framingham, Massachusetts. During his employment, Plaintiff Lowry participated in the Plan. Mr. Lowry suffered injury to his Plan account by paying excessive Administrative Fees. Finally, Plaintiff Lowry suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan Administrative Fees which, if used to pay for Administrative Fees, would have reduced or eliminated the amounts charged to Plaintiff Lowry's individual account.

26. Plaintiff, Ansh Bahri ("Bahri"), resides in Falls Church, Virginia. During his employment, Plaintiff Bahri participated in the Plan. Mr. Bahri invested in the Aggressive Allocation Strategy in the Plan and suffered injury to his Plan account due to the significant underperformance of the Winslow Large Cap Growth Fund, Columbia Dividend Income Adv Fund, William and Blair Inst. Int'l Fund, Van Real Estate Index Inst Fund, Invesco Opp Dev Mkt

Y Fund, Van Tot Bond Mkt Index Fund, LS Small Cap Growth Fund, Pimco Total Return Inst Fund, and MFS New Disc Value R6 Fund, all of which were included in the Aggressive Allocation Strategy.[7] Plaintiff Bahri also suffered injury to his Plan account by paying excessive Administrative Fees. Finally, Plaintiff Bahri suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan Administrative Fees which, if used to pay for Administrative Fees, would have reduced or eliminated the amounts charged to Plaintiff Bahri's individual account.

27. Plaintiff, Gabriel Ha ("Ha"), resides in Natick, Massachusetts. During his employment, Plaintiff Ha participated in the Plan. Mr. Ha invested in the Aggressive Allocation Strategy in the Plan and suffered injury to his Plan account due to the significant underperformance of the Winslow Large Cap Growth Fund, Columbia Dividend Income Adv Fund, William and Blair Inst. Int'l Fund, Van Real Estate Index Inst Fund, Invesco Opp Dev Mkt Y Fund, Van Tot Bond Mkt Index Fund, LS Small Cap Growth Fund, Pimco Total Return Inst Fund, and MFS New Disc Value R6 Fund, all of which were included in the Aggressive Allocation Strategy. Plaintiff Ha also suffered injury to his Plan account by paying excessive Administrative Fees. Finally, Plaintiff Ha suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan Administrative Fees which, if used to pay for Administrative Fees, would have reduced or eliminated the amounts charged to Plaintiff Ha's individual account.

28. Plaintiff, Jennifer Henley ("Henley"), resides in Hopkinton, Massachusetts. During her employment, Plaintiff Henley participated in the Plan. Ms. Henley invested in the Moderate Allocation Strategy in the Plan and suffered injury to her Plan account due to the significant

---

[7] *See* MathWorks 401(k) Plan Aggressive Allocation Strategy, available at https://workplace.schwab.com/resource/mathworks-aggressive-allocation-strategy (last accessed June 24, 2026).

underperformance of the Winslow Large Cap Growth Fund, Columbia Dividend Income Adv Fund, William and Blair Inst. Int'l Fund, Van Real Estate Index Inst Fund, Invesco Opp Dev Mkt Y Fund, Van Tot Bond Mkt Index Fund, LS Small Cap Growth Fund, Pimco Total Return Inst Fund, and MFS New Disc Value R6 Fund, all of which were included in the Moderate Allocation Strategy. [8] Plaintiff Henley also suffered injury to her Plan account by paying excessive Plan Administrative Fees. Finally, Plaintiff Henley suffered injury due to the fact that Defendants failed to use forfeited Plan funds to pay Plan Administrative Fees which, if used to pay for Administrative Fees, would have reduced or eliminated the amounts charged to Plaintiff Henley's individual account.

29. Plaintiffs have standing to bring this action on behalf of the Plan because they participated in the Plan and were injured by Defendants' unlawful conduct. Plaintiffs are entitled to receive benefits in the amount of the difference between the value of their account currently, or as of the time their accounts were distributed, and what their accounts are or would have been worth, but for Defendants' breaches of fiduciary duty as described herein.

30. Plaintiffs did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**Defendants**

**Company Defendant**

31. The MathWorks, Inc. is the Plan sponsor and Plan administrator with a principal place of business at 3 Apple Hill Drive, Natick, Massachusetts. *See* 2024 Form 5500 of the Plan,

---

[8] *See* MathWorks 401(k) Plan Moderate Allocation Strategy, available at https://workplace.schwab.com/resource/mathworks-moderate-allocation-strategy (last accessed June 24, 2026).

at 1-2; *see also* Schwab Retirement Plan Services, Inc. Pre-Approved Defined Contribution Plan Adoption Agreement #001 for use with Basic Plan Document #13 ("Pre-Approved Plan Doc."), at 2 (identifying The MathWorks, Inc. as the Plan Administrators); Schwab Retirement Plan Services, Inc. Pre-Approved Defined Contribution Plan Basic Plan Document #13 ) ("Plan Doc."), at 1 ("The term Administrator means the Sponsoring Employer unless the Sponsoring Employer appoints another Administrator under Section 8.1."); *id*., at 14 ("The term Named Fiduciary means the Administrator or other fiduciary named by the Administrator or the Sponsoring Employer to control and manage the operation and administration of the Plan."); Summary Plan Description The MathWorks 401(k) Retirement Plan ("SPD"), at 1 ("The Administrator is The MathWorks, Inc., whose address is 3 Apple Hill Drive, Natick, MA 01760, and whose telephone number is (508) 647-7000.").

32. "MathWorks is the leading developer of mathematical computing software for engineers and scientists." https://www.mathworks.com/company/jobs/resources/what-we-do.html.

33. During the putative Class Period, the Company is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), during the Class Period, because it had control over Plan management and/or authority or control over management or disposition of Plan assets.

34. Further, MathWorks appointed the Committee to, among other things, ensure that the investments available to Plan participants are appropriate, had no more expense than reasonable and performed well as compared to their peers. *See* Plan Doc., at 6 ("The term *Committee* means the administrative/advisory group that the Sponsoring Employer may establish and to which the Sponsoring Employer may delegate certain of (sic) responsibilities as

Administrator. The Sponsoring Employer may elect to assign another name for such administrative/advisory group.").

35. As will be discussed below, the Committee fell well short of these fiduciary goals. Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

36. Accordingly, MathWorks during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had a duty to monitor the actions of the Committee.

37. For the foregoing reasons, the Company is a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

**Committee Defendants**

38. As discussed above, MathWorks appointed the Committee to, among other things, ensure that the investments available to Plan participants are appropriate, had no more expense than reasonable and performed well as compared to their peers. See Auditor's Report attached to 2024 Form 5500 for the Plan, at 10 ("The plan administrator is responsible for the oversight of the Plan while the Plan Advisory Team is responsible for determining appropriateness of the Plan's investment offerings and monitoring investment performance, among other duties.").

39. The Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each exercised discretionary authority over management or disposition of Plan assets.

40. The Committee and unnamed members of the Committee during the Class Period (referred to herein as John Does 1-10), are collectively referred to herein as the "Committee Defendants."

## IV. CLASS ACTION ALLEGATIONS[9]

41. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class ("Class"):[10]

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of The MathWorks 401(k) Retirement Plan, at any time between July 2, 2020 through the date of judgment (the "Class Period").

42. The members of the Class are so numerous that joinder of all members is impractical. The 2024 Form 5500 lists 5,108 Plan "participants with account balances as of the end of the plan year." 2024 Form 5500 for the Plan, at 2.

43. Plaintiffs' claims are typical of the claims of the members of the Class. Like other Class members, Plaintiffs participated in the Plan and have suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiffs consistently with other Class members and managed the Plan as a single entity. Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

[9] Although this is a proposed class action, the allegations in this complaint are alternatively pled in derivative fashion on behalf of the Plan because class certification is not necessarily required for Plaintiff to prosecute claims on behalf of the Plan and all participants. *See, e.g.*, *In re: Wilmington Trust Corp.,* 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims). ERISA Section 502(a), 29 U.S.C. § 1132(a), authorizes pension plan participants to bring suit on behalf of a plan to recover losses to a plan.

[10] Plaintiffs reserve the right to propose other or additional classes or subclasses in their motion for class certification or subsequent pleadings in this action.

44. There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A. Whether Defendants are/were fiduciaries of the Plan;

B. Whether Defendants breached their fiduciary duty of prudence by engaging in the conduct described herein;

C. Whether the Company failed to adequately monitor the Committee and other fiduciaries to ensure the Plan was being managed in compliance with ERISA;

D. The proper form of equitable and injunctive relief; and

E. The proper measure of monetary relief.

45. Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

46. This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of

other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

47. In the alternative, certification under Rule 23(b)(2) is warranted because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## V. THE PLAN

48. The Plan is a defined contribution plan covering substantially all eligible employees of MathWorks. *See* Auditor's Report, attached to 2024 Form 5500 for the Plan, at 4. ("The Plan is a defined contribution plan covering all employees of The MathWorks, Inc. (the "Company").").

***Eligibility***

49. In general, the Plan covers all employees of MathWorks. *See* SPD, at 7. ("All employees are Eligible Employees for this part of the Plan except (a) Interns; (b) Temporary or Seasonal Employees, unless such Employee works at least 1,000 Hours of Service in an Eligibility Computation Period; and (c) Employees classified as Co-ops and Contractors. Employees classified as Puerto Rico Based Employees are also ineligible to participate under the Plan.").

50. There is an automatic enrollment feature for the Plan. *See* SPD, at 4 ("The Plan provides for automatic enrollment with respect to certain "Covered" Employees. If you (a) became a Participant on or after January 1, 2011 or (b) terminated employment and were rehired, we will automatically withhold 6% (the "default percentage") as a 401(k) Contribution unless you elect to withhold a different percentage of Compensation or to not withhold at all.").

***Contributions***

51. Eligible employees may elect to make contributions to their Plan accounts. *See* SPD, at 3 ("Once you become a Participant, you can begin making 401(k) Contributions. 401(k) Contributions are amounts that you elect to contribute to the Plan through payroll withholding, and they are made on a pre-tax basis (that is, they are deducted from your Compensation free of current income taxes but are fully taxable when they are subsequently distributed from the Plan) or on an after-tax basis (that is, as Roth 401(k) Contributions, which are deducted from your Compensation on an after-tax basis but may be distributed on a tax-free basis if certain requirements are met). You can designate up to 100% of your 401(k) Contributions as Roth 401(k) Contributions."). Auditor's Report, attached to 2023 Form 5500 for the Plan, at 7; *see also id*. ("Your pre-tax 401(k) Contributions, plus any Roth 401(k) Contributions you make, can't exceed 50% of your Compensation."); Auditor's Report, attached to 2024 Form 5500 for the Plan, at 10 ("Each year, participants may contribute up to 50% of their annual eligible compensation, as defined by the Plan.").

52. The Company makes mandatory matching contributions of 50% of employee contributions up to 6% of employee compensation. *See* SPD, at 5 ("We will make a Matching Contribution to the Plan for each eligible Participant equal to 50% of the Participant's 401(k) Contributions that do not exceed 6% of Compensation."); *see also* Auditor's Report, attached to 2024 Form 5500 for the Plan, at 10 ("Mandatory non-safe harbor employer matching contributions are equal to 50% of the amount that a participant contributed to the Plan, limited to 6% of the participant's annual eligible compensation.").

53. Like other companies that sponsor 401(k) plans for their employees, MathWorks enjoys both direct and indirect benefits by providing matching contributions to Plan participants.

Employers are generally permitted to take tax deductions for their contributions to 401(k) plans at the time when the contributions are made. *See generally,* https:/www.irs.gov/retirement-plans/plan-sponsor/401k-plan-overview.

54. MathWorks also benefits in other ways from the Plan's matching program. It is well-known that "[o]ffering retirement plans can help in employers' efforts to attract new employees and reduce turnover." *See,* https://www.paychex.com/articles/employee-benefits/employer-matching-401k-benefits.

55. Given the size of the Plan, MathWorks likely enjoyed significant tax and cost savings from offering a match.

***Vesting***

56. Participant in the Plan are vested in the Company's matching contributions based upon the following schedule:

1 Year of Vesting Service .................. 25% Vested
2 Years of Vesting Service ................. 50% Vested
3 Years of Vesting Service ................. 75% Vested
4 Years of Vesting Service ................ 100% Vested

SPD, at 6.

***Forfeitures***

57. Forfeitures in a 401(k) plan are the non-vested portion of the employer's contribution to a participant's account balance in the plan. A participant's non-vested portion of their account balance when the employee's employment terminates will become a forfeiture. See SPD, at 44 ("As elected in the Adoption Agreement, the date upon which a Forfeiture occurs is either (1) the earlier of the date a Participant who Terminated Employment receives a distribution of his or her Vested Interest (but if the Plan is a 401(k) Plan, no Forfeiture will occur until the Participant's entire Elective Deferral Account balance has also been distributed) or the date the

Participant incurs five consecutive Breaks in Service after Termination of Employment; or (2) the date a Participant incurs five consecutive Breaks in Vesting Service after Termination of Employment.").

58. Defendants had a choice on how to utilize forfeited amounts. At the discretion of the Plan administrator (Company) in its fiduciary capacity, forfeitures may be used to pay the Plan's expenses. *See* Plan Doc., at 44 ("The Administrator may elect to use any portion of the Forfeiture Account to pay administrative expenses incurred by the Plan."); *see also* Pre-Approved Plan Doc., at 21 ("**15.2 Use of Forfeitures.** Forfeitures that are not used to pay administrative expenses or to restore forfeited accounts as permitted under Section 3.11 of the BPD will be: … Used to reduce other Employer contributions, added to other Employer contributions, or reallocated, as elected by the Employer."); Second Amendment to The MathWorks 401(k) Retirement Plan (executed November 28, 2023), at 7 (same).

59. The table below demonstrates how forfeiture amounts were applied during the Class Period.

| Plan Year | Forfeitures used to reduce employer matching contributions | Forfeitures used to pay Plan expenses | Balance in forfeiture account |
|---|---|---|---|
| 2020 | $668,757 | $0 | $10,712 |
| 2021 | $652,342 | $0 | $8,978 |
| 2022 | $575,377 | $0 | $45,545 |
| 2023 | $721,328 | $0 | $38,151 |
| 2024 | $1,073,411 | $0 | $12,850 |
| **TOTAL** | **$3,691,215** | **$0** | |

## VI. THE TOTALITY OF CIRCUMSTANCES DEMONSTRATES THAT DEFENDANTS FAILED TO ADMINISTER THE PLAN IN A PRUDENT MANNER

### A. ERISA Fiduciaries Are Held to the Highest Standards Regarding Process and Methodology of Evaluating Investments

60. As described in the "Parties" section above, Defendants were fiduciaries of the Plan.

61. ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014) (quotation omitted). In addition to a duty to select prudent investments, under ERISA, a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble I*, 135 S. Ct. at 1828; *see also Hughes*, 142 S. Ct. at 741.

62. ERISA is derived from trust law. *Tibble*, 135 S. Ct. at 1828. Accordingly, the Supreme Court has stated that where ERISA is silent, courts should seek guidance from trust law. *Varity Corp v. Howe*, 516 U.S. 489, 496-97 (1996).

63. Trust law states selection of appropriate funds for a plan depends on "the type of trustee and the nature of the breach involved, the availability of relevant data, and other facts and circumstances of the case." Restatement (Third) of Trusts § 100 cmt. b(1).

64. As stated by the DOL: ERISA "requires plan fiduciaries, when selecting and monitoring service providers and plan investments, to act prudently and solely in the interest of the plan's participants and beneficiaries. Responsible plan fiduciaries also must ensure that arrangements with their service providers are 'reasonable' and that only 'reasonable' compensation is paid for services. …" DOL 408(b)(2) Regulation Fact Sheet.

65. Acting in the sole interest of plan participants is all encompassing. A fiduciary must monitor all investment options in a retirement plan, especially a defined contribution plan, as a prudent investment professional. *See* the U.S. Department of Labor, Employee Benefits Security Administration (EBSA)'s "Meeting Your Fiduciary Responsibilities," at 2 ("The duty to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires expertise in a variety of areas, such as investments."), available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

66. A prudent investment professional, and hence a fiduciary, must regularly evaluate, among other things, a fund's performance history, changes to the fund's investment strategy, changes to the underlying assets in the investment, total assets under management within the fund, fees, and other relevant factors.

67. With respect to investment returns, measurement of investments against prudently managed alternatives is critical given that these alternatives represent other investments available to a plan, which may increase the likelihood that participants reach/live their preferred lifestyle in retirement.

68. Comparison of funds to market indices to make an assessment as to a fund's effectiveness or performance is only half the story. Many market indices have been created to track many different segments of the market. Indices cannot be purchased directly. They are simply measures of market performance.

69. Thus, only comparing funds to a market index does not completely fulfil fiduciary obligations to prudently select funds in the best interest of participants. It is just one tool.

70. Whether a plan fiduciary enlists the assistance of an investment manager, consultant, or advisor, the plan's fiduciaries are not relieved of fiduciary liability for selecting and monitoring the plan's investment options.

71. It is black letter law that a fiduciary's duty to conduct an "independent investigation into the merits of a particular investment," is the "most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 435 (3d Circ. 1996). *Hughes*, 142 S. Ct. at 738 (noting ERISA fiduciaries are required to "conduct their own independent evaluation to determine which investments may by prudently included in the plan's menu of options.").

72. To the extent plan fiduciaries have adopted an investment policy statement, as it appears was the case here, those fiduciaries "must comply with the plan's written statements of investment policy, insofar as those written statements are consistent with the provisions of ERISA." *Lauderdale v. NFP Retirement, Inc.*, 2022 WL 17260510, at * 10 (S.D. Cal. Nov. 17, 2022). That is, the investment policy statement must be written with the sole interest of the plan participant in mind.

73. Plaintiffs did not have and do not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan, including Defendants' processes (and execution of such) for selecting, monitoring, and removing the Plan's investments because this information is solely within the possession of Defendant prior to discovery. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("If Plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme of [ERISA] will fail, and the crucial rights secured by ERISA will suffer.").

74. This is especially true in this case where the Plan administrator has actively blocked Plaintiffs' access to documents. In an attempt to discover the details of the Plan's mismanagement,

Plaintiffs wrote to the Plan administrator to request, among other things, "all written instruments" governing or pertaining to the Plan, including "investment policy statements (IPS), and amendments, exhibits, or appendices," "minutes of any meetings of the Plan's investment committee," or any "other contract instrument under which the Plan was established or operated." This request was made on November 5, 2025. *See* Exhibit A ("104(b) Letter").

75. As alleged in more detail below, on December 5, 2025, the Plan administrator provided certain Plan documents, but not meeting minutes or an IPS. *See* Exhibit B ("104(b) Response Letter.")

76. An IPS is inarguably a governing plan document. As alleged below, the Plan administrator's refusal to produce the IPS is an ongoing violation of ERISA.

77. Reviewing an IPS and meeting minutes, when they exist, is the bare minimum needed to peek into a fiduciary's monitoring process. But in most cases, even that is not sufficient. For, "[w]hile the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not … suffice in every case to demonstrate prudence. Deliberative processes can vary in quality or can be followed in bad faith. In assessing whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment,' not merely whether there were any methods whatsoever." *Sacerdote et al. v. New York Univ*., 9 F.4th 95, 111 (2d Cir. 2021) (emphasis in original).

78. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon several factors discussed below.

79. Defendants' breaches of their fiduciary duties, relating to their overall decision-making related to selection and monitoring of investments, resulted in, *inter alia*, the selection

(and maintenance) of several funds in the Plan throughout the Class Period that wasted the assets of the Plan and the assets of participants because the funds (1) were in the wrong share class, (2) had available CIT counterparts that were not selected, and/or (3) were poor choices selected through a flawed methodology.

### 1. Several of the Plan's Funds With Substantial Assets Were Not in the Lowest Fee Share Class Available to the Plan

80. One of Defendants' fiduciary breaches stemming from their flawed investment review system resulted in the failure to identify available lower-cost share classes of many of the funds in the Plan during the Class Period. This failure resulted in unnecessary lower investment returns.

81. Many mutual funds offer multiple classes of shares in a single mutual fund that are targeted at different investors. There is no difference between share classes other than cost—the funds hold identical investments and have the same manager. Because the institutional share classes are otherwise identical to the Investor share classes, but with lower fees, a prudent fiduciary would know immediately that a switch is necessary. *Tibble, et al. v. Edison Int. et al*., No. 07 5359, 2017 WL 3523737, at * 13 (C.D. Cal. Aug. 16, 2017).

82. Generally, more expensive share classes are targeted at smaller investors with less bargaining power, while lower cost shares are targeted at institutional investors with more assets. Qualifying for lower share classes usually requires only a minimum of a million dollars for individual funds. However, it is common knowledge that investment minimums are often waived for large billion-dollar plans like the Plan. *See, e.g.*, *Davis et al. v. Washington Univ. et al*., 960 F.3d 478, 483 (8th Cir. 2020) ("minimum investment requirements are 'routinely waived' for individual investors in large retirement-savings plans"); *Sweda v. Univ. of Pennsylvania*, 923 F.3d

320, 329 (3d Cir. 2019) (citing *Tibble II*, 729 F.3d at 1137 n.24) (confirming that investment minimums are typically waived for large plans).

83. During the Class Period, the following funds in the Plan were not in the lowest cost share class:

| **Fund in Plan** | **Year/Assets** | | | | |
|---|---|---|---|---|---|
| | **2020** | **2021** | **2022** | **2023** | **2024** |
| Winslow LC Gro | $87,432,627 | $107,026,132 | $76,201,861 | $114,318,045 | $147,172,827 |
| Columbia Div Inc Adv Sh | $57,818,229 | $73,277,441 | $72,851,714 | $82,629,900 | N/A |
| Columbia Div Inst sh | N/A | N/A | N/A | N/A | $97,693,559 |
| William and Blair Inst. Int'l | $38,335,789 | $43,431,377 | $32,841,558 | $38,430,941 | $40,748,407 |
| LS Small Cap Growth | $41,796,769 | $43,778,302 | $32,249,781 | $36,200,330 | $38,429,994 |
| Van Real Estate Index Inst | N/A | $12,223,440 | $9,560,923 | $11,719,056 | $12,755,444 |
| Invesco Opp Dev Mkt Y | $37,043,931 | $35,672,622 | $28,129,700 | $33,584,764 | $32,557,376 |
| **Total** | **$262,427,345** | **$315,409,314** | **$251,835,537** | **$316,883,036** | **$369,357,607** |

84. The total assets under management for all of these funds were well over a quarter of a billion dollars each year from 2020 to at least 2024, thus easily qualifying them for lower-priced share classes. The charts below depict the difference in returns, resulting from the difference in share prices, between the Plan's funds and equivalent share classes to demonstrate losses to the Plan and its participants.

85. In 2020 the following less expensive share class alternatives were available for the above funds, but were not selected:

| **2020** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Winslow LC Gro I | | Winslow LC Gro R6 | | |
| Return | 37.38% | | 37.44% | | |

| | | | | | |
|---|---|---|---|---|---|
| Assets Under Management | $87,432,627 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | $52,460.00 | | |

| **2020** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Columbia Div Inc Adv sh | | Columbia Div Inc Inst sh | Columbia Div Inc Inst2 sh | Columbia Div Inc. Inst.3 sh |
| Return | 7.77% | | 7.79% | 7.90% | 7.81% |
| Assets Under Management | $57,818,229 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | $11,564 | $75,164 | $23,127 |

| **2020** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | LS Small Cap Growth I | | LS Small Cap Growth N | | |
| Return | 34.11% | | 34.27% | | |
| Assets Under Management | $41,796,769 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | $66,875 | | |

| **2020** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Invesco Opp Dev Mkt Y | | Invesco Opp Dev Mkt R6 | Invesco Opp Dev Mkt R5 | |
| Return | 17.50% | | 17.66% | 17.59% | |
| Assets Under Management | $37,043,931 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | $59,270 | $33,340 | |

86. The total estimated damages for failure to utilize all available less expensive share classes in 2020 was at least $253,769.00.

87. In 2021, the following less expensive share classes for the Plan's funds were available but not selected:

| **2021** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Winslow LC Gro I | | Winslow LC Gro R6 | | |
| Return | 24.81% | | **24.85%** | | |
| Assets Under Management | $107,026,132 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$42,818** | | |

| **2021** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Columbia Div Inc. Adv Sh | | Columbia Div Inc Inst sh | Columbia Div Inc Inst2 sh | Columbia Div Inc. Inst.3 sh |
| Return | 26.28% | | 26.28% | **26.34%** | **26.45%** |
| Assets Under Management | $73,277,441 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | N/A | **$43,966** | **$124,572** |

| **2021** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | LS Small Cap Growth | | LS Small Cap Growth N | | |
| Return | 10.07% | | **10.19%** | | |
| Assets Under Management | $43,778,302 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$52,534** | | |

| **2021** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Invesco Opp Dev Mkt Y | | Invesco Opp Dev Mkt R6 | Invesco Opp Dev Mkt R5 | |
| Return | -7.25% | | **-7.13%** | **-7.22%** | |
| Assets Under Management | $35,672,622 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$42,807** | **$10,702** | |

88. The total estimated damages for failure to utilize available less expensive share classes in 2021 was at least $262,731.00.

89. In 2022, the following less expensive share classes for the Plan's funds were available but not selected:

| **2022** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Winslow LC Gro I | | Winslow LC Gro R6 | | |
| Return | -31.25% | | **-31.16%** | | |
| Assets Under Management | $76,201,861 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$68,582** | | |

| **2022** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Columbia Div Inc. Adv Sh | | Columbia Div Inc Inst sh | Columbia Div Inc Inst2 sh | Columbia Div Inc. Inst.3 sh |
| Return | -4.96% | | **-4.96%** | **-4.91%** | **-4.86%** |
| Assets Under Management | $72,851,714 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **N/A** | **$36,426** | **$72,852** |

| **2022** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | LS Small Cap Growth | | LS Small Cap Growth N | | |
| Return | -22.92% | | **-22.84%** | | |
| Assets Under Management | $32,249,781 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$25,800** | | |
| **2022** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |

| | Invesco Opp Dev Mkt Y | | Invesco Opp Dev Mkt R6 | Invesco Opp Dev Mkt R5 | |
|---|---|---|---|---|---|
| Return | -24.97% | | **-24.85%** | **-24.77%** | |
| Assets Under Management | $28,129,700 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$33,756** | **$56,259** | |

90. The total estimated damages for failure to utilize available less expensive share classes in 2022 was at least $223,493.00.

91. In 2023, the following less expensive share classes for the Plan's funds were available but not selected:

| **2023** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Winslow LC Gro I | | Winslow LC Gro R6 | | |
| Return | 42.99% | | **43.09%** | | |
| Assets Under Management | $114,318,045 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$114,318** | | |

| **2023** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Columbia Div Inc. Adv Sh | | Columbia Div Inc Inst sh | Columbia Div Inc Inst2 sh | Columbia Div Inc. Inst.3 sh |
| Return | 10.49% | | **10.52%** | **10.56%** | **10.60%** |
| Assets Under Management | $82,629,900 | | | | |
| **Damages** | | | **$24,789** | **$57,841** | **$90,893** |

| | | | | | |
|---|---|---|---|---|---|
| **(Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | | | |

| 2023 | Fund in Plan | | Available Lower Share Class (es) | | |
|---|---|---|---|---|---|
| | William and Blair | | William and Blair Int'l Gro R6 | | |
| Return | 15.20% | | **15.47%** | | |
| Assets Under Management | $38,430,941 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$103,764** | | |

| 2023 | Fund in Plan | | Available Lower Share Class (es) | | |
|---|---|---|---|---|---|
| | LS Small Cap Growth | | LS Small Cap Growth N | | |
| Return | 11.92% | | **12.06%** | | |
| Assets Under Management | $36,200,330 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$50,680** | | |

| 2023 | Fund in Plan | | Available Lower Share Class (es) | | |
|---|---|---|---|---|---|
| | Invesco Opp Dev Mkt Y | | Invesco Opp Dev Mkt R6 | Invesco Opp Dev Mkt R5 | |
| Return | 11.40% | | **11.54%** | **11.53%** | |

| | | | | | |
|---|---|---|---|---|---|
| Assets Under Management | $33,584,764 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$47,019** | **$43,660** | |

92. The total estimated damages for failure to utilize available less expensive share classes in 2023 was at least $406,674.00.

93. In 2024, the following less expensive share classes for the Plan's funds were available but not selected:

| **2024** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Winslow LC Gro I | | Winslow LC Gro R6 | | |
| Return | 29.72% | | **29.77%** | | |
| Assets Under Management | $147,172,827 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$73,586** | | |

| **2024** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Columbia Div Inc Inst sh | | Columbia Div Inc Inst2 sh | Columbia Div Inc. Inst.3 sh | |
| Return | 15.01% | | **15.09%** | **15.18%** | |
| Assets Under Management | $97,693,559 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$78,155** | **$166,079** | |

| **2024** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | William and Blair | | William and Blair Int'l Gro R6 | | |
| Return | 2.41% | | **2.43%** | | |
| Assets Under Management | $40,748,407 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$8,150** | | |

| **2024** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | LS Small Cap Growth | | LS Small Cap Growth N | | |
| Return | 14.98% | | **15.13%** | | |
| Assets Under Management | $38,429,994 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$57,645** | | |

| **2024** | **Fund in Plan** | | **Available Lower Share Class (es)** | | |
|---|---|---|---|---|---|
| | Invesco Opp Dev Mkt Y | | Invesco Opp Dev Mkt R6 | Invesco Opp Dev Mkt R5 | |
| Return | -1.12% | | **-0.98%** | **-1.05%** | |

| | | | | | |
|---|---|---|---|---|---|
| Assets Under Management | $32,557,376 | | | | |
| **Damages (Diff Bet. Plan Fund and LSC Returns multiplied by AUM)** | | | **$45,580** | **$22,790** | |

94. The total estimated damages for failure to utilize available less expensive share classes in 2024 was at least $351,040.00.

95. In aggregate, from 2020 through 2024, the failure to utilize available less expensive share classes cost the Plan and its participants at least **$1.5 million** before interest and lost opportunity costs are factored in. These damages continue to accrue to the extent the Plan continues to retain the more expensive and worse performing share classes.

96. At all times during the Class Period, Defendants knew or should have known of the existence of identical less expensive share classes and therefore also should have immediately identified the prudence of transferring the Plan's funds into these alternative investments.

97. There is no good-faith explanation for utilizing high-cost share classes when lower-cost share classes – and accordingly, better performing - are available for the exact same investment. Because the more expensive share classes chosen by Defendants were the same in every respect other than price to their less expensive counterparts, the more expensive share class funds ***could not have*** (1) a potential for higher return, (2) lower financial risk, (3) more services offered, or (4) greater management flexibility. In short, the Plan did not receive any additional services or benefits based on its use of more expensive share classes; the only consequence was higher costs and lower returns for Plan participants.

98. Defendants offered investments with higher costs (higher expense ratios) to participants while the same investments with lower costs (lower expense ratios), and therefore

higher returns, were available, but not offered, to the detriment of the compounding returns that participants should have received. This reduces the likelihood that participants achieve their preferred lifestyle in retirement.

99. Simply put, a fiduciary to a large defined contribution plan such as the Plan can use its asset size and negotiating power to invest in the cheapest share class available.

100. Here, had the Plan's fiduciaries prudently undertaken their fiduciary responsibility for determining the appropriateness of the Plan's investment offerings and monitoring investment performance, the Plan would have moved to the identical lower cost share class of the Plan's funds. Failure to do so cost the Plan and its participants unnecessary fees, and hence inferior returns, resulting in losses of millions of dollars per year.

**2. The Plan's Fiduciaries Failed to Investigate the Availability of Lower Cost Collective Trusts**

101. Additional evidence of the Defendants' flawed process in selecting and monitoring funds for the Plan is evidenced by the lack of collective trusts as investment options. Collective trusts, also referred to as CITs, are akin to low-cost share classes because many if not most mutual fund strategies are available in a collective trust format, and the investments in the collective trusts are identical to those held by the mutual fund, except they cost less.

102. As stated in the Restatement (Third) of Trusts § 100 cmt. b(1) appropriate comparators for mutual funds may include "return rates of one or more suitable common trust funds…)."

103. Plan fiduciaries such as Defendants here must be continually mindful of investment options to ensure they do not unduly risk plan participants' savings and do not charge unreasonable fees. Some of the best investment vehicles for these goals are collective trusts, which pool plan

participants' investments and provide lower fee alternatives to institutional and mutual fund share classes.

104. Collective trusts are administered by banks or trust companies, which assemble a mix of assets such as stocks, bonds and cash. Regulated by the Office of the Comptroller of the Currency rather than the Securities and Exchange Commission, collective trusts have simple disclosure requirements, and cannot advertise nor issue formal prospectuses. As a result, their costs are much less, with lower or no administrative costs, and lower or no marketing or advertising costs. *See* Powell, Robert, "Not Your Normal Nest Egg," *The Wall Street Journal*, March 2013, available at http://www.wsj.com/articles/SB10001424127887324296604578177291881550144.

105. Due to their potential to reduce overall plan costs, collective trusts are becoming increasingly popular; Use of CITs in DC Plans Booming (discussing data showing that among both mid-size and large defined contribution plans, significantly more assets are held in collective trusts than in mutual funds).[11]

106. A clear indication of Defendants' lack of a prudent investment evaluation process was their failure to identify and select available collective trusts for the Winslow LC Growth Fund and Vanguard Total Bond Market Index Fund.

[11] The criticisms that have been launched against collective trust vehicles in the past no longer apply. Collective trusts use a unitized structure and the units are valued daily; as a result, participants invested in collective trusts are able to track the daily performance of their investments online. Use of CITs in DC Plans Booming; Paula Aven Gladych, CITs Gaining Ground in 401(k) Plans, EMPLOYEE BENEFIT NEWS (Apr. 14, 2016), available at http://www.benefitnews.com/news/cits-gaining-ground-in-401-k-plans (hereinafter CITs Gaining Ground). Many if not most mutual fund strategies are available in collective trust format, and the investments in the collective trusts are identical to those held by the mutual fund. And because collective trusts contract directly with the plan, and provide regular reports regarding costs and investment holdings, the plan has the same level of protection that the Investment Company Act provides to individual investors, thus eliminating the need for the protections of the Investment Company Act. Further, collective trusts are still subject to state and federal banking regulations that provide comparable protections.

107. A prudent fiduciary conducting an impartial review of the Plan's investments would have identified that both of these funds were available as CITs. The chart below compares the return differences (which reflects the cost differences) between the mutual fund and CIT versions of the Winslow Large Cap Growth fund.

| **2022** | **Fund in Plan** | **Available Collective Trust** |
|---|---|---|
| | Winslow LC Gro I | Winslow LC Gro CIT Cl 2 |
| Return | -31.25% | **-31.09%** |
| Assets Under Management | $76,201,861 | |
| **Damages (Diff Bet. Plan Fund and CT Returns multiplied by AUM)** | | **$121,923** |

| **2023** | **Fund in Plan** | **Available Collective Trust** |
|---|---|---|
| | Winslow LC Gro I | Winslow LC Gro CIT Cl 2 |
| Return | 42.99% | **43.24%** |
| Assets Under Management | $114,318,045 | |
| **Damages (Diff Bet. Plan Fund and CT Returns multiplied by AUM)** | | **$285,795** |

| **2024** | **Fund in Plan** | **Available Collective Trust** |
|---|---|---|
| | Winslow LC Gro I | Winslow LC Gro CIT Cl 2 |
| Return | 29.72% | **31.40%** |
| Assets Under Management | $147,172,827 | |
| **Damages (Diff Bet. Plan Fund and CT Returns multiplied by AUM)** | | **$2,472,503** |

108. The total estimated damages for failure to utilize the available Winslow LC Gro CIT CL 2 from 2022 to 2024 was at least **$2.9 million**.

109. The Vanguard Total Bond Market Index fund also had an available CIT version during the Class Period. The chart below compares the return differences (which reflects the cost differences) between the mutual fund and CIT versions of the Vanguard Total Bond Market Index fund.

| **2020** | **Fund in Plan** | | **Available Collective Trust** |
|---|---|---|---|
| | Van Tot Bond Mkt Index | | Van Inst Ttl Bd Mkt Indx CIT |
| Return | 7.74% | | **7.76%** |
| Assets Under Management | $54,323,522 | | |
| **Damages (Diff Bet. Plan Fund and CT Returns multiplied by AUM)** | | | **$10,865** |
| | | | |
| **2021** | **Fund in Plan** | | **Available Collective Trust** |
| | Van Tot Bond Mkt Index | | Van Inst Ttl Bd Mkt Indx CIT |
| Return | -1.65% | | **-1.63%** |
| Assets Under Management | $57,053,208 | | |
| **Damages (Diff Bet. Plan Fund and CT Returns multiplied by AUM)** | | | **$11,411** |
| | | | |

| **2022** | **Fund in Plan** | | **Available Collective Trust** |
|---|---|---|---|
| | Van Tot Bond Mkt Index | | Van Inst Ttl Bd Mkt Indx CIT |
| Return | -13.15% | | **-13.13%** |
| Assets Under Management | $51,988,533 | | |
| **Damages (Diff Bet. Plan Fund and CT Returns multiplied by AUM)** | | | **$10,398** |
| | | | |
| **2023** | **Fund in Plan** | | **Available Collective Trust** |
| | Van Tot Bond Mkt Index | | Van Inst Ttl Bd Mkt Indx CIT |
| Return | 5.72% | | **5.75%** |
| Assets Under Management | $63,365,707 | | |
| **Damages (Diff Bet. Plan Fund and CT Returns multiplied by AUM)** | | | **$19,010** |
| | | | |
| **2024** | **Fund in Plan** | | **Available Collective Trust** |
| | Van Tot Bond Mkt Index | | Van Inst Ttl Bd Mkt Indx CIT |
| Return | 1.25% | | **1.29%** |
| Assets Under Management | $72,192,767 | | |
| **Damages (Diff Bet. Plan Fund and CT Returns multiplied by AUM)** | | | **$28,877** |

110. The total estimated damages for failure to utilize the available Vanguard Total Bond Market Index CIT from 2020 to 2024 was at least **$80,561.00**.

111. As demonstrated by the above, collective trusts were readily available to the Plan during the Class Period, which Defendants knew or should have known of their existence, and

therefore also should have immediately identified the prudence of transferring the Plan's funds into these alternative investments.

112. The Plan incurred excess fees, and accordingly lower returns, due to Defendants' failure to adequately investigate the availability of CITs in the same investment style of mutual funds in the Plan. Because of the Plan's size, it could have reaped considerable cost savings by using CITs, but Defendants again failed to investigate this option adequately.

113. In aggregate, the total estimated damages for failure to utilize available collective trusts from 2020 to 2024 was close to **$3 million**. These damages continue to accrue to the extent the Plan's funds continue to be in non-CIT version of the funds.

114. In summary, Defendants could have used the Plan's bargaining power to obtain high-quality, low-cost alternatives to mutual funds, in order to negotiate the best possible price for the Plan. By failing to investigate the use of alternative investments such as collective trusts, Defendants caused the Plan to pay millions of dollars per year in unnecessary fees resulting in inferior investment returns.

### 3. Defendants Failed to Utilize the Tools of Modern Portfolio Theory in Selecting Prudent Investments for the Plan

115. Modern trust law and those who have a legal fiduciary duty to choose and review investments on behalf of others, apply the tools of Modern Portfolio Theory ("MPT") in evaluating a trustee or fiduciary's investment choices and overall strategy. UPIA § 2(b) (Unif. Law Comm'n 1995); Restatement (Third) of Trusts § 90(a) (2007) ("This standard requires the exercise of reasonable care, skill, and caution, and is to be applied to investments not in isolation but in the context of the trust portfolio and as a part of an overall investment strategy, which should incorporate risk and return objectives reasonably suitable to the trust."). *See Birse v. CenturyLink, Inc.*, 2019 WL 9467530, * 5 (D. Col. Oct. 23, 2019).

116. During the Class Period, the Plan's fiduciaries imprudently selected the following funds given the availability of prudent alternatives:

| **Fund in Plan** | **Assets Under Management** | | | | |
|---|---|---|---|---|---|
| | **2020** | **2021** | **2022** | **2023** | **2024** |
| Winslow LC Gro | $87,432,627 | $107,026,132 | $76,201,861 | $114,318,046 | $147,172,827 |
| Columbia Div Inc Adv Sh | $57,818,229 | $73,277,441 | $72,851,714 | $82,629,900 | $97,693,559 |
| Van Tot Bond Mkt Index | $54,323,522 | $57,053,208 | $51,988,533 | $63,365,707 | $72,192,767 |
| Pimco Total Return Inst | $49,814,450 | $56,777,144 | $48,864,844 | $58,237,717 | $65,989,467 |
| William and Blair Inst. Int'l | $38,335,789 | $43,431,377 | $32,841,558 | $38,430,941 | $40,748,407 |
| LS Small Cap Growth | $41,796,769 | $43,778,302 | $32,249,781 | $36,200,330 | $38,429,994 |
| MFS New Disc Value R6 | $22,647,883 | $30,116,776 | $27,288,171 | $30,549,871 | $32,638,664 |
| Invesco Opp Dev Mkt Y | $37,043,931 | $35,672,622 | $28,129,700 | $33,584,764 | $32,557,376 |
| **Total** | **$389,213,200** | **$447,133,002** | **$370,416,162** | **$457,317,276** | **$527,423,061** |

117. In total, there was $2,191,502,701 of assets under the management for these eight funds "Challenged Funds"). These eight funds each had alternative funds that were superior in several meaningful categories as aggregated by Morningstar: quartile ranks, percentile ranks, and returns. A prudent fiduciary acting in the best interest of Plan participants would not have chosen or kept the Challenged Funds given their inferior attributes.

118. Morningstar is inarguably the most accepted source of investment performance information, as it has the most robust information on mutual funds, collective investment trusts, and other types of investments. Indeed, Morningstar is used and trusted by virtually all financial professionals and fiduciaries.

119. The below charts catalog the above-referenced data and corresponding damages resulting from failure to utilize the prudent alternatives for each of the above eight funds. The prudent alternative funds and the Plan funds are all in the same Morningstar category.

120. A Morningstar Category is assigned by placing funds into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years. Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al.*, No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019).

121. Further, as Morningstar states, it created its categories "to help investors make meaningful comparisons between mutual funds. Morningstar found that the investment objective listed on a fund's prospectus often did not adequately explain how the fund was actually invested." Morningstar Category Classification, 31 March 2022 ("Morningstar Classifier")[12] at page 5. The Morningstar Classifier goes on to state that "[f]or example, many funds claimed to be seeking "growth," but some of those were investing in established blue-chip companies while others were investing in small-cap companies." *Id.*

122. As mentioned above, among the data points Morningstar utilizes are quartile ranks, percentile ranks, and returns.

123. Quartile Ranks "group funds into four categories based on their relative performance within a peer group. These categories divide funds into four equal parts, or 'quartiles,' making it easy to compare how well a fund has performed relative to others." This is how it works:

---

[12] Available at the following web address: https://advisor.morningstar.com/Enterprise/VTC/MorningstarCategoryClassificationforFunds_April2022.pdf. Last accessed on July 24, 2026.

the **quartile rank** divides the funds into four ranges:

1. **Top Quartile**: The top 25% of funds (highest performance).
2. **Second Quartile (Q2)**: The next 25% of funds (above average performance).
3. **Third Quartile (Q3)**: The next 25% of funds (below average performance).
4. **Bottom Quartile**: The bottom 25% of funds (lowest performance).
   - **Example**: If a fund is in the **1st quartile**, it means it is among the top 25% of funds. If it is in the **4th quartile**, it is among the lowest 25% of funds in that group.
   - **Quartile Ranks** are often used over specific time periods like 1-year, 3-year, and 5-year to understand consistent performance over time.

*Available at https://community.morningstar.com/s/article/Ranks-of-Funds*

124. Percentile Ranks "shows where a fund stands in terms of its performance relative to other funds in the group. It indicates the percentage of funds that the particular fund has outperformed." *Id.* This is how it works: "Percentile ranks tell you the percentage of funds that performed worse than the fund in question." *Id.* A percentile rank of 4th means the fund outperformed 96% of its peers during the specified time period.

125. The below charts examine the Challenged Funds, comparing their Morningstar star data with comparable funds.

126. Below is an evaluation of the Winslow LC Gro I fund from 2020 to 2024.

| **2020** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | Winslow LC Gro I | | TRP LCGrow I | Van Gro Ind Adm | Fid Grow Co K6 |
| Return | 37.38% | | **39.56%** | **40.19%** | **68.77%** |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | **$1,906,031** | **$2,456,857** | **$27,445,102** |
| Quartile Rank | 2nd | | 2nd | 2nd | 1st |
| Percentile Rank | 37th | | 29th | 28th | 4th |
| 5 Yr Return as of 2020 | 19.77% | | 21.54% | 20.32% | N/A |

| | | | | | |
|---|---|---|---|---|---|
| 10 Yr Return as of 2020 | 16.17% | | 18.18% | 16.67% | N/A |
| | | | | | |
| **2021** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Winslow LC Gro I | | TRP LCGrow I | Van Gro Ind Adm | Fid Grow Co K6 |
| Return | 24.81% | | 23.18% | 27.26% | 22.09% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | -$1,744,526 | $2,622,144 | -$2,911,111 |
| Quartile Rank | 2nd | | 2nd | 1st | 3rd |
| Percentile Rank | 35th | | 44th | 19th | 53rd |
| 5 Yr Return as of 2021 | 25.78% | | 25.78% | 24.77% | N/A |
| 10 Yr Return as of 2022 | 18.79% | | 20.84% | 19.29% | N/A |
| | | | | | |
| **2022** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Winslow LC Gro I | | TRP LCGrow I | Van Gro Ind Adm | Fid Grow Co K |
| Return | -31.25% | | -35.18% | -33.14% | -33.74% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | -$2,994,733 | -$1,440,215 | -$1,897,426 |
| Quartile Rank | 3rd | | 4th | 3rd | 3rd |
| Percentile Rank | 59th | | 77th | 71st | 74th |
| 5 Yr Return as of 2022 | 10.33% | | 8.35% | 9.61% | N/A |
| 10 Yr Return as of 2022 | 13.01% | | 13.85% | 12.80% | N/A |
| | | | | | |
| **2023** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Winslow LC Gro I | | TRP LCGrow I | Van Gro Ind Adm | Fid Grow Co K |
| Return | 42.99% | | 46.21% | 46.77% | 47.33% |
| **Damages** | | | $3,681,041 | $4,321,222 | $4,961,403 |

| | | | | | |
|---|---|---|---|---|---|
| **(Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | | | |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 30th | | 19th | 17th | 16th |
| 5 Yr Return as of 2023 | 17.64% | | 15.92% | 19.16% | N/A |
| 10 Yr Return as of 2023 | 13.50% | | 13.99% | 13.97% | N/A |
| | | | | | |
| **2024** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Winslow LC Gro I | | TRP LCGrow I | Van Gro Ind Adm | Fid Grow Co K |
| Return | 29.72% | | 30.99% | 32.66% | 37.31% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $1,869,095 | $4,326,881 | $11,170,418 |
| Quartile Rank | 2nd | | 2nd | 2nd | 1st |
| Percentile Rank | 50th | | 43rd | 34th | 11th |
| 5 Yr Return as of 2024 | 16.94% | | 16.37% | 18.36% | 22.91% |
| 10 Yr Return as of 2024 | 15.33% | | 16.14% | 15.75% | N/A |

127. The below charts examine the Columbia Div Inc Adv Sh from 2020 to 2024.

| **2020** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | Columbia Div Inc Adv Sh | | Putnam LC Val R6 | Schwab Fund US L Co Indx | Voya Corp Ldrs 100 R6 |
| Return | 7.77% | | 6.19% | 9.16% | 11.89% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | -$913,528 | $803,673 | $2,382,111 |
| Quartile Rank | N/A | | 2nd | 1st | N/A |

| | | | | | |
|---|---|---|---|---|---|
| Percentile Rank | N/A | | 26th | 13th | N/A |
| 5 Yr Return as of 2020 | N/A | | 11.59% | 12.17% | 12.36% |
| 10 Yr Return as of 2020 | N/A | | 11.79% | 11.66% | 12.35% |
| | | | | | |
| **2021** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Columbia Div Inc Adv Sh | | Putnam LC Val R6 | Schwab Fund US L Co Indx | Voya Corp Ldrs 100 R6 |
| Return | 26.28% | | 27.33% | 31.58% | 27.76% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $769,413 | $3,883,704 | **$1,084,506** |
| Quartile Rank | N/A | | 2nd | 1st | N/A |
| Percentile Rank | N/A | | 38th | 10th | N/A |
| 5 Yr Return as of 2021 | N/A | | 14.08% | 14.98% | 15.40% |
| 10 Yr Return as of 2021 | N/A | | 14.32% | 14.80% | 14.90% |
| | | | | | |
| **2022** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Columbia Div Inc Adv Sh | | Putnam LC Val R6 | Schwab Fund US L Co Indx | Voya Corp Ldrs 100 R6 |
| Return | -4.96% | | -2.75% | -6.87% | -10.89% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $1,610,023 | -1,391,468 | -4,320,107 |
| Quartile Rank | N/A | | 1st | 3rd | 4th |
| Percentile Rank | N/A | | 25th | 60th | 86th |
| 5 Yr Return as of 2022 | N/A | | 9.54% | 9.84% | 8.86% |
| 10 Yr Return as of 2022 | N/A | | 12.01% | 12.27% | 11.87% |
| | | | | | |
| **2023** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Columbia Div Inc Adv Sh | | Putnam LC Val R6 | Schwab Fund US L Co Indx | Voya Corp Ldrs 100 R6 |

| | | | | | |
|---|---|---|---|---|---|
| Return | 10.49% | | 15.75% | 18.50% | 19.35% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $4,346,333 | $6,329,450 | $7,321,009 |
| Quartile Rank | N/A | | 1st | 1st | 1st |
| Percentile Rank | N/A | | 23rd | 14th | 11th |
| 5 Yr Return as of 2023 | N/A | | 14.69% | 15.29% | 14.36% |
| 10 Yr Return as of 2023 | N/A | | 10.53% | 10.85% | 10.59% |
| | | | | | |
| **2024** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Columbia Div Inc Adv Sh | | Putnam LC Val R6 | Schwab Fund US L Co Indx | Voya Corp Ldrs 100 R6 |
| Return | N/A | | 19.42% | 16.78% | 18.06% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $4,308,286 | $1,729,176 | $2,979,654 |
| Quartile Rank | N/A | | 1st | 2nd | 1st |
| Percentile Rank | N/A | | 10th | 26th | 16th |
| 5 Yr Return as of 2024 | N/A | | 12.69% | 13.04% | 12.41% |
| 10 Yr Return as of 2024 | N/A | | 11.15% | 11.29% | 11.00% |

128. The below charts examine the Van Tot Bond Mkt Index from 2020 to 2024.

| **2020** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | Van Tot Bond Mkt Index | | Col Inst 3 Class | DH Core Bond | MassMut Core Bd |
| Return | 7.74% | | 9.28% | 8.04% | 8.64% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $836,582 | $162,971 | $488,912 |
| Quartile Rank | 2nd | | 1st | 2nd | 1st |

| | | | | | |
|---|---|---|---|---|---|
| Percentile Rank | 45th | | 11th | 35th | 22nd |
| 5 Yr Return as of 2020 | 4.47% | | N/A | N/A | 5.03% |
| 10 Yr Return as of 2020 | 3.81% | | N/A | N/A | 4.29% |
| | | | | | |
| **2021** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Van Tot Bond Mkt Index | | Col Inst 3 Class | DH Core Bond | MassMut Core Bd |
| Return | -1.65% | | -0.67% | -0.95% | 0.67% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $559,121 | $399,372 | $1,323,634 |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 50th | | 13th | 19th | 2nd |
| 5 Yr Return as of 2021 | 3.59% | | N/A | 4.17% | 4.57% |
| 10 Yr Return as of 2021 | 2.87% | | N/A | N/A | 3.59% |
| | | | | | |
| **2022** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Van Tot Bond Mkt Index | | Col Inst 3 Class | DH Core Bond | MassMut Core Bd |
| Return | -13.15% | | -15.44% | -11.63% | -15.19% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | -1,190,537 | 790,226 | -1,060,566 |
| Quartile Rank | 2nd | | 4th | 1st | 4th |
| Percentile Rank | 40th | | 94th | 14th | 93rd |
| 5 Yr Return as of 2022 | 0.01% | | N/A | 0.79% | 0.01% |
| 10 Yr Return as of 2022 | 1.02% | | N/A | N/A | 1.29% |
| | | | | | |

| **2023** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | Van Tot Bond Mkt Index | | Col Inst 3 Class | DH Core Bond | MassMut Core Bd |
| Return | 5.72% | | 7.28% | 6.62% | 6.72% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $988,505 | $570,291 | $633,657 |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 44th | | 4th | 15th | 13th |
| 5 Yr Return as of 2023 | 1.15% | | N/A | 1.75% | 1.65% |
| 10 Yr Return as of 2023 | N/A | | N/A | N/A | 2.08% |
| | | | | | |

| **2024** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | Van Tot Bond Mkt Index | | Col Inst 3 Class | DH Core Bond | MassMut Core Bd |
| Return | 1.25% | | 2.85% | 3.53% | 2.62% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $1,155,084 | $1,645,995 | $1,891,450 |
| Quartile Rank | 3rd | | 1st | 1st | 1st |
| Percentile Rank | 73rd | | 9th | 4th | 3rd |
| 5 Yr Return as of 2024 | -0.03% | | 0.76% | 0.65% | 0.44% |
| 10 Yr Return as of 2024 | 1.34% | | N/A | N/A | 1.83% |

129. The below charts examine the Pimpco Total Return Inst. from 2020 to 2024.

| **2020** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | Pimpco Total Return Inst. | | BBH Inc. I | Gugg Tot Ret Bd Ins | Loom Sayl Inv Grade N |
| Return | 8.88% | | 11.55% | 15.24% | 6.36% |

| | | | | | |
|---|---|---|---|---|---|
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | | | |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 35th | | 7th | 3rd | 6th |
| 5 Yr Return as of 2020 | 4.86% | | N/A | 6.61% | 6.65% |
| 10 Yr Return as of 2020 | 4.19% | | N/A | N/A | 5.12% |
| | | | | | |
| **2021** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Pimpco Total Return Inst. | | BBH Inc. I | Gugg Tot Ret Bd Ins | Loom Sayl Inv Grade N |
| Return | -0.84% | | 1.60% | -0.14% | 0.37% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | **$1,385,362** | $392,440 | $687,003 |
| Quartile Rank | 3rd | | 1st | 1st | 1st |
| Percentile Rank | 51st | | 5th | 24th | 11th |
| 5 Yr Return as of 2021 | 4.15% | | N/A | 5.30% | 5.44% |
| 10 Yr Return as of 2021 | 3.68% | | N/A | 5.69% | 4.64% |
| | | | | | |
| **2022** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Pimpco Total Return Inst. | | BBH Inc. I | Gugg Tot Ret Bd Ins | Loom Sayl Inv Grade N |
| Return | -14.09% | | -13.71% | -15.54% | -11.26% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $185,686 | -$708,540 | $1,382,875 |
| Quartile Rank | 3rd | | 3rd | 4th | 1st |
| Percentile Rank | 65th | | 55th | 91st | 11th |

| | | | | | |
|---|---|---|---|---|---|
| 5 Yr Return as of 2022 | 0.03% | | N/A | 0.53% | 1.59% |
| 10 Yr Return as of 2022 | 1.11% | | N/A | 2.67% | 2.21% |
| | | | | | |
| **2023** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Pimpco Total Return Inst. | | BBH Inc. I | Gugg Tot Ret Bd Ins | Loom Sayl Inv Grade N |
| Return | 6.30% | | 9.07% | 7.43% | 7.55% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $1,613,185 | $658,086 | $727,971 |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 49th | | 3rd | 12th | 10th |
| 5 Yr Return as of 2023 | 1.31% | | 3.11% | 1.80% | 3.15% |
| 10 Yr Return as of 2023 | 1.93% | | N/A | 3.18% | 2.74% |
| | | | | | |
| **2024** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Pimpco Total Return Inst. | | BBH Inc. I | Gugg Tot Ret Bd Ins | Loom Sayl Inv Grade N |
| Return | 2.61% | | 3.81% | 3.16% | 2.74% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $791,874 | $362,942 | $85,786 |
| Quartile Rank | 2nd | | 1st | 1st | 2nd |
| Percentile Rank | 35th | | 11th | 9th | 31st |
| 5 Yr Return as of 2024 | 0.23% | | 2.06% | 1.50% | 1.92% |
| 10 Yr Return as of 2024 | 2.56% | | N/A | 3.37% | 3.82% |

130. The below charts examine the William and Blair Int’l Gro fund from 2020 to 2024.

| | | | | | |
|---|---|---|---|---|---|
| **2020** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | William and Blair Int’l Gro | | WCM Foc Intl Gro Inst | PGIM Jenn Int’l Opps R6 | JH Intl Dyn Gro R6 |

| | | | | | |
|---|---|---|---|---|---|
| Return | 32.16% | | 32.82% | 55.61% | 36.66% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $134,175 | $8,870,902 | $1,606,270 |
| Quartile Rank | 1st | | 1st | 1st | 1st |
| Percentile Rank | 18th | | 14th | 5th | 11th |
| 5 Yr Return as of 2020 | 12.15% | | 17.07% | 20.51% | N/A |
| 10 Yr Return as of 2020 | 8.41% | | N/A | N/A | N/A |
| | | | | | |
| **2021** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | William and Blair Int'l Gro | | WCM Foc Intl Gro Inst | PGIM Jenn Int'l Opps R6 | JH Intl Dyn Gro R6 |
| Return | 9.29% | | 17.02% | 13.34% | 18.66% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $3,340,284 | $1,729,243 | $4,053,249 |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 48th | | 9th | 18th | 4th |
| 5 Yr Return as of 2021 | 15.15% | | 20.65% | 26.03% | N/A |
| 10 Yr Return as of 2021 | 11.01% | | 14.03% | N/A | N/A |
| | | | | | |
| **2022** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | William and Blair Int'l Gro | | WCM Foc Intl Gro Inst | PGIM Jenn Int'l Opps R6 | JH Intl Dyn Gro R6 |
| Return | -28.28% | | -28.90% | -36.91% | -31.91% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | -$203,618 | -$2,834,226 | -$1,021,372 |
| Quartile Rank | 3rd | | 3rd | 4th | 4th |
| Percentile Rank | 71st | | 75th | 94th | 86th |

| | | | | | |
|---|---|---|---|---|---|
| 5 Yr Return as of 2022 | 2.31% | | 6.73% | 6.05% | N/A |
| 10 Yr Return as of 2022 | 5.08% | | 8.91% | 7.57% | N/A |
| | | | | | |
| **2023** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | William and Blair Int'l Gro | | WCM Foc Intl Gro Inst | PGIM Jenn Int'l Opps R6 | JH Intl Dyn Gro R6 |
| Return | 15.20% | | 16.56% | 20.34% | 19.00% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $522,661 | $1,975,350 | $1,460,376 |
| Quartile Rank | 3rd | | 2nd | 1st | 1st |
| Percentile Rank | 66th | | 50th | 17th | 24th |
| 5 Yr Return as of 2023 | 9.38% | | 11.73% | 13.11% | N/A |
| 10 Yr Return as of 2023 | 4.75% | | 8.44% | 7.56% | N/A |
| | | | | | |
| **2024** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | William and Blair Int'l Gro | | WCM Foc Intl Gro Inst | PGIM Jenn Int'l Opps R6 | JH Intl Dyn Gro R6 |
| Return | 2.14% | | 6.95% | 6.89% | 25.05% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $1,849,978 | $982,037 | $9,225,439 |
| Quartile Rank | 3rd | | 2nd | 2nd | 1st |
| Percentile Rank | 65th | | 33rd | 34th | 2nd |
| 5 Yr Return as of 2024 | 4.16% | | 6.62% | 7.44% | 10.61% |
| 10 Yr Return as of 2024 | 5.28% | | 9.21% | 9.25% | N/A |

131. The below charts examine the LS Small Cap Growth I from 2020 to 2024.

| **2020** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | LS Small Cap Growth I | | Driehaus Micr Cap Gro | Fuller Thaler Beh SC Gro R6 | Hood River Sc Gro Ret |
| Return | 34.11% | | 85.60% | 51.45% | 60.81% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $21,521,156 | $7,247,560 | $11,159,737 |
| Quartile Rank | 3rd | | 1st | 1st | 1st |
| Percentile Rank | 56th | | 2nd | 24th | 14th |
| 5 Yr Return as of 2020 | 17.98% | | 30.46% | N/A | 20.61% |
| 10 Yr Return as of 2020 | 14.66% | | N/A | N/A | 16.71% |
| | | | | | |
| **2021** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | LS Small Cap Growth I | | Driehaus Micr Cap Gro | Fuller Thaler Beh SC Gro R6 | Hood River Sc Gro Ret |
| Return | 10.07% | | 24.73% | 24.83% | 23.88% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $6,417,899 | $6,461,677 | $6,045,784 |
| Quartile Rank | 3rd | | 1st | 1st | 1st |
| Percentile Rank | 58th | | 11th | 10th | 13th |
| 5 Yr Return as of 2021 | 18.93% | | 31.97% | N/A | 22.74% |
| 10 Yr Return as of 2021 | 15.40% | | N/A | N/A | 19.87% |
| | | | | | |
| **2022** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | LS Small Cap Growth I | | Driehaus Micr Cap Gro | Fuller Thaler Beh SC Gro R6 | Hood River Sc Gro Ret |
| Return | -22.92% | | -33.53% | -27.42% | -27.93% |
| **Damages (Diff Bet. Plan Fund and Alt** | | | -$3,421,702 | -$1,451,240 | -$1,615,714 |

| | | | | | |
|---|---|---|---|---|---|
| **Returns multiplied by AUM)** | | | | | |
| Quartile Rank | 1st | | 1st | 2nd | 3rd |
| Percentile Rank | 24th | | 81st | 48th | 52nd |
| 5 Yr Return as of 2022 | 7.65% | | 16.44% | 10.57% | 10.69% |
| 10 Yr Return as of 2022 | 11.34% | | N/A | N/A | 13.63% |
| | | | | | |
| **2023** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | LS Small Cap Growth I | | Driehaus Micr Cap Gro | Fuller Thaler Beh SC Gro R6 | Hood River Sc Gro Ret |
| Return | 11.92% | | 11.44% | 33.29% | 21.60% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | -$173,762 | $7,736,011 | $3,504,192 |
| Quartile Rank | 4th | | 4th | 1st | 1st |
| Percentile Rank | 80th | | 84th | 3rd | 16th |
| 5 Yr Return as of 2023 | 10.01% | | 18.08% | 16.88% | 16.74% |
| 10 Yr Return as of 2023 | 8.29% | | 14.16% | N/A | 11.73% |
| | | | | | |
| **2024** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | LS Small Cap Growth I | | Driehaus Micr Cap Gro | Fuller Thaler Beh SC Gro R6 | Hood River Sc Gro Ret |
| Return | 14.98% | | 30.58% | 28.99% | 35.69% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $5,995,079 | $5,384,042 | $7,958,852 |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 42nd | | 4th | 4th | 3rd |
| 5 Yr Return as of 2024 | 7.92% | | 17.50% | 18.73% | 18.82% |

| | | | | | |
|---|---|---|---|---|---|
| 10 Yr Return as of 2024 | 9.70% | | 16.32% | N/A | 14.25% |

132. The below charts examine the MFS New Disc Value R6 from 2020 to 2024.

| **2020** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | MFS New Disc Value R6 | | Brandes SC Val Cl R6 | PIMCO RAE US Small Inst | Van S&P MC 400 Val Inst |
| Return | 3.74% | | 20.81% | 6.88% | 3.70% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $3,865,994 | $711,144 | -$9,059 |
| Quartile Rank | 2nd | | 1st | 2nd | 2nd |
| Percentile Rank | 45th | | 4th | 27th | 45th |
| 5 Yr Return as of 2020 | 12.46% | | N/A | 9.54% | N/A |
| 10 Yr Return as of 2020 | N/A | | N/A | N/A | N/A |
| | | | | | |
| **2021** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | MFS New Disc Value R6 | | Brandes SC Val Cl R6 | PIMCO RAE US Small Inst | Van S&P MC 400 Val Inst |
| Return | 33.97% | | 28.67% | 40.37% | 30.59% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | -$1,596,189 | $1,927,474 | -$1,017,947 |
| Quartile Rank | 2nd | | 3rd | 1st | 2nd |
| Percentile Rank | 35th | | 65th | 10th | 38th |
| 5 Yr Return as of 2021 | 13.74% | | N/A | 11.73% | N/A |
| 10 Yr Return as of 2021 | 15.08% | | N/A | N/A | N/A |
| | | | | | |
| **2022** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | MFS New Disc Value R6 | | Brandes SC Val Cl R6 | PIMCO RAE US Small Inst | Van S&P MC 400 Val Inst |
| Return | -10.76% | | -7.88 | -4.64% | -7.00% |

| | | | | | |
|---|---|---|---|---|---|
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $785,889 | $1,670,036 | $1,026,035 |
| Quartile Rank | 2nd | | 2nd | 1st | 2nd |
| Percentile Rank | 49th | | 29th | 14th | 39th |
| 5 Yr Return as of 2022 | 8.11% | | N/A | 8.72% | N/A |
| 10 Yr Return as of 2022 | 11.67% | | N/A | N/A | N/A |
| | | | | | |
| **2023** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | MFS New Disc Value R6 | | Brandes SC Val Cl R6 | PIMCO RAE US Small Inst | Van S&P MC 400 Val Inst |
| Return | 11.30% | | 22.91% | 20.06% | 15.35% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $3,546,840 | $2,676,270 | $1,237,270 |
| Quartile Rank | 4th | | 1st | 1st | 2nd |
| Percentile Rank | 85th | | 13th | 25th | 34th |
| 5 Yr Return as of 2023 | 13.05% | | 13.02% | 15.61% | N/A |
| 10 Yr Return as of 2023 | 9.16% | | N/A | N/A | N/A |
| | | | | | |
| **2024** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | MFS New Disc Value R6 | | Brandes SC Val Cl R6 | PIMCO RAE US Small Inst | Van S&P MC 400 Val Inst |
| Return | 9.50% | | 25.06% | 22.08% | 11.65% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $5,078,576 | $4,105,944 | $701,731 |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 45th | | 1st | 2nd | 23rd |

| | | | | | |
|---|---|---|---|---|---|
| 5 Yr Return as of 2024 | 8.61% | | 17.09% | 15.96% | N/A |
| 10 Yr Return as of 2024 | 9.80% | | N/A | N/A | N/A |

133. The below charts examine the Invesco Opp Dev Mkt Y from 2021 to 2024.

| **2020** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | Invesco Opp Dev Mkt Y | | Ev Em and Front Count I | Laz Em Mkts Eq R6 | Pzena Em Mkts Val Inc |
| Return | 17.50% | | 13.46% | 0.01% | 8.44% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | -$1,496,575 | -$6,478,984 | -$3,356,180 |
| Quartile Rank | 2nd | | 3rd | 4th | 4th |
| Percentile Rank | 45th | | 67th | 93rd | 82nd |
| 5 Yr Return as of 2020 | 13.24% | | 9.27% | 8.32% | 11.35% |
| 10 Yr Return as of 2020 | 5.19% | | N/A | 1.31% | N/A |
| | | | | | |
| **2021** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Invesco Opp Dev Mkt Y | | Ev Em and Front Count I | Laz Em Mkts Eq R6 | Pzena Em Mkts Val Inc |
| Return | -7.25% | | 13.42% | 5.44% | 6.68% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $7,373,531 | $4,526,856 | $4,969,196 |
| Quartile Rank | 4th | | 1st | 1st | 1st |
| Percentile Rank | 86th | | 19th | 25th | 22nd |
| 5 Yr Return as of 2021 | 10.02% | | 10.21% | 5.46% | 8.37% |
| 10 Yr Return as of 2021 | 6.47% | | N/A | 3.86% | N/A |
| | | | | | |

| **2022** | **Fund in Plan** | | **Available Alternative Funds** | | |
|---|---|---|---|---|---|
| | Invesco Opp Dev Mkt Y | | Ev Em and Front Count I | Laz Em Mkts Eq R6 | Pzena Em Mkts Val Inc |
| Return | -24.97% | | -14.63% | -14.86% | -5.69% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $2,908,611 | $2,843,913 | $5,423,406 |
| Quartile Rank | 4th | | 1st | 1st | 1st |
| Percentile Rank | 78th | | 15th | 16th | 3rd |
| 5 Yr Return as of 2022 | -2.19% | | **1.11%** | -2.80% | 1.64% |
| 10 Yr Return as of 2022 | 1.48% | | **N/A** | 0.16% | N/A |
| | | | | | |
| **2023** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Invesco Opp Dev Mkt Y | | Ev Em and Front Count I | Laz Em Mkts Eq R6 | Pzena Em Mkts Val Inc |
| Return | 11.40% | | 25.77% | 22.37% | 20.71% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $4,826,131 | $3,684,249 | $3,126,742 |
| Quartile Rank | 2nd | | 1st | 1st | 1st |
| Percentile Rank | 49th | | 3rd | 7th | 11th |
| 5 Yr Return as of 2023 | 2.52% | | **9.24%** | 5.33% | 7.84% |
| 10 Yr Return as of 2023 | 1.73% | | **N/A** | 2.28% | N/A |
| | | | | | |
| **2024** | **Fund in Plan** | | **Available Alternative Funds** | | |
| | Invesco Opp Dev Mkt Y | | Ev Em and Front Count I | Laz Em Mkts Eq R6 | Pzena Em Mkts Val Inc |
| Return | -1.12% | | 12.00% | 7.59% | 4.62% |
| **Damages (Diff Bet. Plan Fund and Alt Returns multiplied by AUM)** | | | $4,271,528 | $2,835,747 | $1,868,793 |

| | | | | | |
|---|---|---|---|---|---|
| Quartile Rank | 4th | | 1st | 2nd | 3rd |
| Percentile Rank | 92nd | | 11th | 34th | 68th |
| 5 Yr Return as of 2024 | -2.07% | | 9.12% | 3.40% | 6.62% |
| 10 Yr Return as of 2024 | 2.09% | | 6.30% | 3.47% | 5.99% |

134. The damages in aggregate for failure to select prudent alternative funds form 2020 to 2024 was in the millions. Year after year, with the outlier year of 2022 as the exception, the comparator funds did better than the Challenged Funds in every significant performance category. The comparators chosen are just a few examples of the many available funds within the same peer group as the Challenged Funds that outperformed the Challenged Funds. These damages continue to accrue to the extent the Challenged Funds remain in the Plan.

#### 4. The Plan Lacked Diversification and Created Additional Concentration Risk, High Correlation, Higher Volatility and Had Poor Security Selection

135. As described herein, an investment committee demonstrates prudence by applying viable methodologies to choose and review investments. Insofar as doing so, the investments that they choose and review, should offer retirement plan participants a reasonable opportunity to understand the dynamics of these investments including the ability to diversify to reduce over concentration/investment overlap, volatility, and correlation.

136. The Plan offered 4 options purporting to be in the large cap space: The American Bal. R6, Van Inst Indx Inst Plus, Van Total Inst Stk Mkt Indx 1, and Win Grow I.

137. Large cap investments are generally available in three types: (1) large cap value, (2) large cap blend and (3) large cap growth.

138. There are different types of large cap funds. First, large cap mutual funds are defined as having stocks of large-cap companies that are less expensive or growing more slowly

than other large cap stocks. Stocks in the top 70% of the capitalization of the U.S. equity market are defined as large cap. *See generally* Morningtar.com

139. Secondly, large cap blend funds are defined as being fairly representative of the overall U.S. stock market in size, growth rates, and price. *Id.* The blend style is assigned to portfolios where neither growth nor value characteristics predominate. *Id.*

140. Finally, large cap growth mutual funds are defined as having stocks of large-cap companies that are projected to grow faster than other large-cap stocks. *Id.*

141. The Plan fiduciaries' methodology for choosing investments produced 4 mutual funds where mega/large caps were the dominant equity positions. These 4 funds as identified above are the American Bal. R6, Van Inst Indx Inst Plus, Van Total Inst Stk Mkt Indx 1, and Win Grow I.

142. As of the third quarter of 2025, these four Plan funds, comprised a significant percentage of the Plan's overall assets. Specifically, in 2025 the funds comprised $956,086,724 of the Plan's total assets of $1,649,405,685, which is nearly 58%.

143. These four funds overlapped securities as indicated below:

| **3Q 2025** | **Am. Bal. R6** | **Van Inst Indx Inst Plus** | **Van Total Inst Stk Mkt Index** | **NYLI Win LC Grow I** |
|---|---|---|---|---|
| Assets Under Mgm't[13] | $352,990,830 | $371,278,264 | $84,644,803 | $147,172,827 |
| Cap Style[14] | Large Blend | Large Blend | Large Blend | Large Growth |
| Broad | X | X | X | X |
| MSFT | X | X | X | X |
| NVIDIA | X | X | X | X |

[13] Assets under management are year-end 2024 which is the latest asset data publicly available.
[14]

| | | | | |
|---|---|---|---|---|
| Meta A | X | X | X | X |
| Alph C | X | X | X | X |
| Apple | X | X | X | X |
| Amazon | X | X | X | X |
| Alph A | X | X | X | |
| Tesla | | X | X | X |
| Berk B | | X | X | |

144. Accordingly, these large cap equity investments, which had nearly a billion dollars in assets under management in 2025, representing nearly 60% of the Plan's assets, offered little differentiation and collectively offered little diversification, more concentration risk, the likelihood of higher volatility, and additional correlation between the investments because the top 10 positions were so similar.

145. Had the Committee engaged in an appropriate process for selecting funds for the Plan, it would not have chosen funds that deprived plan participants of any meaningful large cap investment to diversify their portfolio. Instead of providing proper diversification, the four funds produced concentrated risk, added high correlation, higher volatility and poor security.

****

146. The foregoing allegations reflect the Plan fiduciaries' mismanagement as it relates to selection and monitoring of investment options. Their mismanagement also concerned other aspects of managing the Plan's assets which when considered in totality with the mismanagement of investments demonstrate the lack of prudent management by the Plan's fiduciaries.

147. As described below, the Plan had extraordinary Administrative Fees, far exceeding its peers.

**B. The Plan's Administrative Fees were Unreasonable Compared to the Plan's Peers**

148. Another indication that the Plan was poorly managed is it's high administrative costs per participant. According to the Notes to the Plan's financial statements, Plan participants paid a roughly $100 per participant flat rate from 2020 through at least 2024 for services provided by the Plan's recordkeeper (Schwab Ret Plan Services), financial consultants, and other similar service providers. Specifically, the following fees were charged to Plan participants:

| Year | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| **Number of Participants** | 4,396 | 4,472 | 4,901 | 5,203 | 5,108 |
| **Amount Paid** | $105 | $105 | $105 before April 1; $100 after April 1. | $100 | $100 |

149. Comparing the Plan's costs to similarly situated plans with similar services reveals the excessiveness of the Plan's Administrative Fees. As evidenced below, the Plan's per participant administration costs far exceeded several of its peers. Below are a sample of twenty-five similarly-sized 401(k) plans in 2024 offering similar administrative services as the Plan, but charging far less than the Plan:

| Plan Name | Total Assets (in Millions) | No. of Participants | Direct Admin Expense | Direct Admin Expense Per Participant | Direct Admin Expense (%of Assets) | Recordkeeper |
|---|---|---|---|---|---|---|
| **The Plan** | **$1,798.43** | **5,122** | **$644,701** | **$100** | **.000036** | **Schwab** |
| Pacific Life Ins. Co. Ret Incentive Savings Plan | $1,778.73 | 5,053 | $220,446 | $44 | .00014 | |
| Invesco 401(k) Plan | $1,950.15 | 4,960 | $151,260 | $30 | .00008 | Schwab |
| Piper Sandler Cos. Retirement Plans | $692,134,499 | 2,429 | $254,554 | $55 | .00022 | Schwab |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Marvell Semiconductor 401(k) Retirement Plan | $1,363,520,692 | 5,466 | $251,757 | $68 | .00027 | Schwab |
| CF Industries Holding Inc 401(k) Plan | $695,671,098 | 2,847 | $251,963 | $56 | .00023 | Fidelity |
| Rga Savings Plan | $669,847,445 | 2,652 | $139,371 | $53 | .00021 | Fidelity |
| Eastman Kodak Employess'Sa v & Invest Plan | $2,148,394,223 | 7,342 | $468,982 | $64 | .00022 | Merrill Lynch |
| Hollister 401(k) Retirement Saving Plan | $554,477,527 | 1,723 | $89,669 | $52 | .00016 | Fidelity |
| Iso 401(k) Sav & Empl Stock Own Plan | $2,269,827,890 | 8,224 | $507,675 | $62 | .00022 | Principle Life Insurance |
| Syngenta Corp Inv Savings Plan | $2,022,125,105 | 6,541 | $262,434 | $40 | .00013 | T. Rowe Price |
| Citgo Pet Corp Empl Ret & Savings Pl | $1,030,075,948 | 3,341 | $167,276 | $50 | .00016 | Fidelity |
| Agilent Technologies, Inc 401(k) Plan | $2,410,037,096 | 8,623 | $596,455 | $69 | .00025 | Fidelity |
| Owens Corning Savings Plan | $1,305,853,974 | 5,661 | $232,386 | $41 | .00018 | Fidelity |
| LG&E and Ku Savings Plan | $1,015,412,684 | 3,571 | $287,733 | $21 | .00007 | Fidelity |
| The Eisai Retirement Plan | $927,207,772 | 3,424 | $207,316 | $61 | .00022 | Fidelity |
| Investment Plan for Empl of Puget Sound Energy, Inc | $1,339,558,159 | 4,428 | $173,169 | $39 | .00013 | T. Rowe Price |
| St John's University Defined Cont Ret Pl | $1,448,743,593 | 5,445 | $334,307 | $61 | .00023 | TIAA |
| Akami Technologies Inc, 401(k) Plan | $1,439,539,569 | 5,518 | $332,887 | $60 | .00023 | Fidelity |
| W.R. Berkley Corp Profit Sharing Plan | $2,293,383,287 | 9,194 | $349,834 | $38 | .00015 | Fidelity |

| | | | | | | |
|---|---|---|---|---|---|---|
| NJM 401(k) Ret Plan | $875,714,904 | 3,513 | $253,977 | $60 | .00024 | Vanguard |
| Renesas Electronics America Inc 401(k) Plan | $1,356,878,783 | 4,384 | $117,861 | $27 | .00009 | Fidelity |
| Measurement Solutions Profit Sharing Plan | $1,645,875,111 | 6,182 | $323,850 | $52 | .0002 | Vanguard |
| Aerospace Corp 401(k) Plan | $1,469,817,721 | 6,014 | $302,617 | $50 | .00021 | Fidelity |
| San Diego Gas & Electric Company Savings Plan | $2,130,812,074 | 6,058 | $203,999 | $34 | .0001 | T. Rowe Price |
| EOG Resources Inc. Savings and Retirement Plan | $1,323,117,495 | 3,876 | $236,854 | $61 | .00018 | Schwab |
| Varian Medical Systems Inc Retirement Plan | $1,390,998,248 | 5,541 | $324,575 | $60 | .00023 | Fidelity |

150. The above findings are illustrative of the excessive Plan costs compared to its peers throughout the Class Period. Administrative Fees ranged from a low of $21 to a high of $69 for the comparator plans while the Plan's fees were $100, over $30 *higher* per participant than the nearest comparator.

### C. Mathworks Improperly Reduced Company Matching Contributions Through the Use of Forfeitures

151. Another aspect of Defendants' mismanagement and imprudent conduct concerns Defendants' handling of the Pan's forfeiture assets.

152. During the Class Period, Defendants breached their ERISA fiduciary duties by misusing the Plan's assets for MathWorks' benefit and to the detriment of Plan participants.

153. As alleged above, Defendants had a choice on how to utilize forfeited amounts. At the discretion of Company, forfeitures may be used to either pay the Plan's expenses or reduce the Company's contributions to the Plan.

154. Using the forfeitures to reduce MathWorks' contributions is always in the best interest of MathWorks because that option would decrease its own contribution costs, which MathWorks was required to provide per the terms of the Plan language. MathWorks is required to provide matching contributions to Plan participants. By using forfeiture amounts to pay employer contributions, MathWorks gains an advantage because it avoids using its own funds to cover contributions, while plan participants are disadvantaged since they end up bearing the Plan's expenses.

155. Absent any risk that MathWorks would be unable to satisfy its contribution obligations, using forfeitures to pay Plan expenses would be in the participants' best interests because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such expenses.

156. In deciding between using forfeitures to benefit MathWorks or using forfeitures to benefit the participants, the Company is presented with a conflict of interest in administering the Plan and managing and disposing of the Plan's assets.

157. Despite the conflict of interest presented by this decision, the Company failed to undertake any investigation into which option was in the best interest of the Plan's participants and beneficiaries.

158. Defendants did not, for example, investigate whether there was a risk that MathWorks would be unable to satisfy its contribution obligations if forfeitures were used to pay Plan expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plan's

expenses charged to participants and still offset a portion of MathWorks' own contribution obligations, as a prudent person would have done.

159. Defendants also failed to consult with an independent, non-conflicted decisionmaker to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done.

160. Although ERISA, and the Plan,[15] requires fiduciaries to manage the Plan's assets solely in the best interest of participants, and although the Plan grants the Company discretion to use forfeitures to pay Plan expenses, thereby reducing or eliminating the amounts charged to participant accounts to cover such expenses, MathWorks consistently declined to use the Plan's assets for such purpose during the putative Class Period.

161. MathWorks' actions here are especially egregious because the Plan Administrative Fees for participants was excessive as alleged herein.

162. Since at least the beginning of the Class Period, Defendants have improperly used forfeited non-vested Plan assets for MathWorks' benefit to reduce future employer contributions instead of using the funds to benefit Plan participants.

163. According to information from the Plan's Form 5500s, the following represents the amount of the forfeitures improperly used to offset MathWorks' contributions to the Plan, and the amounts used to pay for Plan administration expenses:

| Plan Year | Forfeitures used to reduce employer matching contributions | Forfeitures used to pay Plan expenses | Balance in forfeiture account |
|---|---|---|---|
| 2020 | $668,757 | $0 | $10,712 |
| 2021 | $652,342 | $0 | $8,978 |

[15] *See* SPD, at 17 ("ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called 'fiduciaries' of the Plan, have a duty to do so prudently and in the interest of you and other Plan Participants and beneficiaries.").

| | | | |
|---|---|---|---|
| 2022 | $575,377 | $0 | $45,545 |
| 2023 | $721,328 | $0 | $38,151 |
| 2024 | $1,073,411 | $0 | $12,850 |
| **TOTAL** | **$3,691,215** | **$0** | |

164. Based on the above table, from the beginning of the Class Period through 2024, **over $3.6 million** was improperly steered from paying administrative costs and instead used to benefit the Company.

165. Defendants effectively placed their own interests above the interests of the Plan and its participants and caused harm to the Plan and its participants by reducing Plan assets, not allocating forfeited funds to Plan participants' accounts, and also caused Plan participants to incur at least $3.6 million in expenses that could otherwise have been covered in whole or in part by forfeited funds. This was both a breach of the duty of prudence as well as duty of loyalty.

## VII. DEFENDANTS FAILED TO COMPLY WITH THEIR OBLIGATIONS UNDER 29 U.S.C. § 1024(b)(4)

166. On November 5, 2025, Plaintiffs sent Defendants a written request for documents pursuant to 29 U.S.C. § 1024(b)(4), ERISA §104(b)(4).

167. On December 5, 2025, Defendants responded to Plaintiffs' request, but failed to produce any investment policy statements (IPS) governing the Plan.

168. On April 17, 2026, Plaintiffs sent a letter requesting the Defendants produce the Plan's IPS, if one exists.

169. On April 27, 2026, Defendants responded that "we believe the Plan has already provided the documents and information required to be provided under 29 U.S.C. § 1024(b)(4)."

170. On April 28, 2026, Plaintiffs sent a letter asking Defendants to confirm whether the Plan has an IPS.

171. On May 4, 2026, Defendants responded to Plaintiffs stating, "the Plan does maintain an investment policy document, but it is not one of the 'other instruments under which the Plan is established or operated,' and therefore is not required to be produced under 29 U.S.C. § 1024(b)(4)."

172. Defendants violated 29 U.S.C. § 1132(c)(1) and 29 U.S.C. § 1024(b)(4) by failing to furnish complete documents within 30 days of Plaintiffs' November 5, 2025, written request. More specifically, Defendants failed to provide the Plan's operative IPS.

173. The Plan's SPD states, "Subject to an investment policy established by the Administrator, you can direct how your Account will be invested." SPD, at 10.

174. Under ERISA, and especially the SPD's terms for this Plan, an investment policy statement is a document governing the Plan, and thus Plaintiffs were entitled to receive it under 29 U.S.C. § 1024(b)(4), ERISA §104(b)(4). *See Trs. of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 597 (2d Cir. 2024); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996) ("[T]he funding policy and the investment policy are formal documents under which the ESOP is managed. They are therefore encompassed by § 104(b)(4)."); *Phillips v. Cobham Advanced Elec. Sols., Inc.*, No. 23-cv-03785, 2025 WL 2689268, at *11 (N.D. Cal. Sept. 19, 2025) ("[T]he Fourth Circuit held that the investment policy statement was a 'formal document[] under which the ESOP is managed' because it 'explain[s] the responsibilities regarding investing the assets of the ESOP.'") (citing *Faircloth*, 91 F.3d, at 656).

175. As a result of Defendants' violation of ERISA, Plaintiffs are entitled to an award of statutory penalties at the rate of $110.00 per day under 29 U.S.C. § 1132(c)(1), 29 U.S.C. § 1024(b)(4), and 29 C.F.R. § 2575.502c-1 for each day Defendants have been in violation of its

fiduciary duty to provide information under ERISA, for a total penalty amount to be determined by the Court.

**COUNT I**
**Breaches of Fiduciary Duty of Prudence**
**(against the Committee)**

176. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth here.

177. At all relevant times, the Committee ("Prudence Defendant") was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

178. As a fiduciary of the Plan, the Committee was subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

179. The Prudence Defendant breached these fiduciary duties in multiple respects as discussed throughout this Complaint. The Prudence Defendant did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the interest of Plan participants. Instead, the Prudence Defendant selected and retained investment options in the Plan despite the high cost and underperformance of the funds in relation to other comparable investments. Further, the Prudence Defendant failed to effectively manage the excessive administrative fees of the Plan. m

180. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses due to excessive costs and lower net investment returns. Had Defendant complied with its fiduciary obligations, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

181. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence Defendant is liable to restore to the Plan all losses caused by its breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendant's breaches as set forth in their Prayer for Relief.

182. The Prudence Defendant knowingly participated in each breach, knowing that such acts were a breach, and failed to make any reasonable and timely effort under the circumstances to remedy the breaches.

**COUNT II**
**Breaches of Fiduciary Duty of Prudence**
**(against the Company)**

183. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein

184. At all relevant times, the Company was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

185. As a fiduciary of the Plan, the Company was subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting

in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

186. The Company breached its fiduciary duties in as discussed throughout this Complaint, by using forfeitures to reduce employer contributions instead of defraying administrative costs.

187. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses. Had the Company complied with its fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

188. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Company is liable to restore to the Plan all losses caused by its breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

**COUNT III**
**Breach of Fiduciary Duty of Loyalty**
**(against the Company)**

189. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

190. At all relevant times, the Company was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

191. As a fiduciary of the Plan, the Company was subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

192. Pursuant to 29 U.S.C. § 1104(a)(1)(A), the Company was required to discharge its duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

193. The Company failed to exercise its duty of loyalty to the Plan and its participants by utilizing forfeited funds in the Plan for the benefit of the Company instead of the sole interest of the Plan participants and beneficiaries.

194. The Company used these Plan assets for the purpose of reducing the Company's own contributions to the Plan, thereby saving the Company over three million dollars at the expense of the Plan which received decreased Company contributions and its participants and beneficiaries were forced to incur avoidable expense deductions to their individual accounts.

195. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses.

196. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Company is liable to restore to the Plan all losses caused by its breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendant's breaches as set forth in their Prayer for Relief.

**COUNT IV**
**Failure to Adequately Monitor Other Fiduciaries**
**(against the Company)**

197. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

198. MathWorks (the "Monitoring Defendant"), had the authority to appoint and remove members of the Committee, and the duty to monitor the Committee and were aware that the Committee had critical responsibilities as fiduciaries of the Plan.

199. In light of this authority, the Monitoring Defendant had a duty to monitor the Committee to ensure that the Committee was adequately performing its fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Committee was not fulfilling those duties.

200. The Monitoring Defendant also had a duty to ensure that the members of the Committee possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's investments; and reported regularly to the Company.

201. The Monitoring Defendant breached its fiduciary monitoring duties by, among other things, failing to monitor and evaluate the performance of the Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committee's imprudent actions and omissions.

202. As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars in losses. Had the Monitoring Defendant complied with its fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

203. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Monitoring Defendant is liable to restore to the Plan all losses caused by its failure to adequately monitor the Committee.

In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in their Prayer for Relief.

**COUNT V**
**Failure to Furnish Governing Plan Documents (the Investment Policy Statement)**
**(against the Defendants)**

204. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

205. MathWorks as Plan administrator, and the Committee, had an obligation under 29 U.S.C. § 1024(b)(4) to provide Plaintiffs with governing plan documents upon request.

206. Defendants, or their delegates, failed to comply with their obligations under 29 U.S.C. § 1024(b)(4)

207. Defendants violated 29 U.S.C. § 1132(c)(1) and 29 U.S.C. § 1024(b)(4) by failing to furnish complete documents within 30 days of Plaintiffs' November 5, 2025, written request. Accordingly, Defendants must pay statutory penalties of $110 per day for each day since the IPS was due that Defendants have not produced it.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A. A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as Class Representatives and designation of Plaintiff's counsel as Class Counsel;

C. A Declaration that the Defendants, and each of them, have breached their fiduciary duties under ERISA;

D. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E. An order requiring the Company Defendant to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against the Company Defendant as necessary to effectuate said relief, and to prevent the Company Defendant's unjust enrichment;

F. Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G. An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

H. Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties;

I. An award of pre-judgment interest;

J. An award of costs pursuant to 29 U.S.C. § 1132(g);

K. An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L. Such other and further relief as the Court deems equitable and just.

Dated: July 2, 2026

Respectfully submitted,

/s/ *Jeffrey Hellman*
Jeffrey Hellman, Esquire
BBO # 549896
**Law Offices of Jeffrey Hellman, LLC**
195 Church Street, 10th Floor
New Haven, CT 06510
Tel.: 203-691-8762
Email: jeff@jeffhellmanlaw.com

Mark K. Gyandoh, Esquire
(*pro hac vice* admission to be requested)
James A. Maro, Esquire
(*pro hac vice* admission to be requested)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Email: markg@capozziadler.com
jamesm@capozziadler.com

*Counsel for Plaintiffs and the Putative Class*